## THE SAN PEDRO.[1]

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 155. Submitted December 22, 1911.—Decided February 19, 1912.

The manifest object of the fifty-fourth rule in admiralty cannot be defeated solely because its enforcement might involve expense, delay or inconvenience.

The limited liability proceedings under §§ 4283 *et seq.*, Rev. Stat., is

---

[1] Docket title: Metropolitan Redwood Lumber Co., Claimant of the Steamer "San Pedro," Appellant, *v.* Charles P. Doe, Owner of the American Steamer "George W. Elder," et al.

in its nature exclusive of any separate suit against an owner on account of the ship. The monition which issued after surrender and stipulation for value requires every person to assert his claim in that case.

One having a claim for salvage against a vessel whose owners have instituted proceedings under §§ 4283 *et seq.*, Rev. Stat., cannot proceed in admiralty in a separate suit, and must prove his claim in the limited liability proceeding.

The issuing of an injunction in the limited liability proceeding is not necessary to stop proceedings in other courts on claims against the vessel or its owners. Power to grant an injunction exists under § 4283, Rev. Stat., but when the procedure required by rule 54 has been followed, the monition itself has the effect of a statutory injunction. *Providence, & N. Y. Steamship Co.* v. *Hill Mfg. Co.*, 109 U. S. 578.

*Quære:* Whether liability for towage into port of a vessel after collision is a claim like one for repairs by reason of the collision for which the owners of the injured vessel may recover from guilty colliding vessel.

Under §§ 4283, 4284, Rev. Stat., as amended by § 18 of the act of June 26, 1884, 23 Stat. 55, c. 12, any and all debts and liabilities of the owner incurred on account of the ship without his privity or fault are included in the limited liability proceeding, including claim for salvage after collision. *Richardson* v. *Harmon*, 222 U. S. 96.

*Quære:* Whether a highly meritorious salvage service, benefiting alike the owner and creditors of a vessel, is entitled to preference from the fund.

THE facts, which involve the construction of the statutes limiting liability of vessel owners and practice and procedure thereunder, are stated in the opinion.

*Mr. William Denman* and *Mr. Charles Page* for appellant:

The cost of salving the *San Pedro* is a damage arising from the collision and hence should be litigated in the limitation proceeding. *The Charles G. Lister*, 174 Fed. Rep. 288; *The Cepheus*, 24 Fed. Rep. 507; Marsden on Collisions, 6th ed., 110.

The court is obliged to take cognizance of the salvage in the limitation proceedings for a variety of purposes.

The damages collected from the negligent ship by the

injured one must be paid into the fund if the injured vessel seeks a limitation. *O'Brien* v. *Miller*, 168 U. S. 299. The damages recovered as compensation for the payment of salvage would therefore be a part of the fund.

The liabilities of the owners of vessels arising from a collision are to be litigated in a limitation proceeding just as any other liabilities inflicted on the owner of a vessel which has suffered injury. *Norwich Co.* v. *Wright*, 13 Wall. 104.

As damages from the collision were to be adjudicated in the limitation proceeding, the jurisdiction of the District Court of the libel ceased as soon as the stipulation for value required by rule 54 was filed in the limitation proceeding.

The statutory injunction provided for in Rev. Stat., § 4285, arises as well when a stipulation is given as upon a surrender and *ipso facto* ousts the other courts of jurisdiction without the service of any writ on the parties litigant. *Providence S. S. Co.* v. *Hill Mfg. Co.*, 109 U. S. 578, 600; *Butler* v. *Boston S. S. Co.*, 130 U. S. 527, 550; *The Dimock*, 52 Fed. Rep. 598; *Morrison* v. *District Court of the United States*, 147 U. S. 14.

Even if the *San Pedro* was in fault, the claim against her owners for salvage is not a damage consequential from the collision which could be recovered from the persons wrongfully causing the collision. The salvage liability is a damage consequent from the collision for which the owner is liable, whether or not he can shift that liability to some one else.

The real question is whether the collision is the proximate cause of the damages for which the owners are liable in the salvage suit and it must be patent beyond all cavil that the collision was the sole cause.

There is no disputed question of fact involved in the appeal.

The hardship to neither party can affect the question of

jurisdiction. *Providence S. S. Co.* v. *Hill Mfg. Co.*, 109 U. S. 578.

The salvage proceeding here before the court is separate and distinct from the proceeding for limitation of liability. An appeal in the one can in no way bring up the record in the other.

If, when the salvage claimant subsequently appeared, he was dissatisfied with the amount of the stipulation, his plain remedy was to move for an increase of the appraisement, a right which any claimant has. *In re Morrison*, 147 U. S. 14 at 35.

*Mr. F. A. Cutler, Mr. F. R. Sweasey, Mr. J. N. Gillett, Mr. Aldis B. Browne, Mr. Alexander Britton* and *Mr. Evans Browne* for appellees:

Appellant, having participated in this separate salvage proceeding throughout up to and including their stipulation of March 5, 1909, upon which date every issue has been resolved and every essential element determined, should not thereafter, while there was lacking but the mere mechanical act of signing and filing a second decree, embodying merely the complete mathematical computations, be permitted to escape this award made after full and fair hearing and force a new trial of the matters involved in another proceeding by virtue solely of the suggestion of pending limitation of liability proceedings.

The issuing of an injunction as an essential step in the enforcement of the provisions of the statute has been recognized in numerous cases. *The Lotta*, 150 Fed. Rep. 219; *Delaware River Ferry Co.* v. *Amos*, 179 Fed. Rep. 756, 758; *In re Morrison*, 147 U. S. 14, 35; *Morgan* v. *Sturges*, 154 U. S. 256, 270; *In re Providence &c. S. S. Co.*, 20 Fed. Cas. No. 11,451; *S. C.*, 6 Ben. 124; *The H. F. Dimock*, 52 Fed. Rep. 598, 601; *Norwich & N. Y. Trans. Co.* v. *Wright*, 13 Wall. 104; *In re Long Island Transf. Co.*, 5 Fed. Rep. 629.

The salvage claim is not a damage under provisions of §§ 4283 *et seq.; Norwich & N. Y. Trans. Co.* v. *Wright,* 13 Wall. 104; *The Doris Eckhoff,* 30 Fed. Rep. 140.

Where, as in the present instance, the collision was caused by negligence of appellant itself and no damages whatever are recoverable against the owner of the other vessel on account of payment of salvage or other loss, there is no case of damage to appellant. *The Charles G. Lister,* 174 Fed. Rep. 288; *O'Brien* v. *Miller,* 168 U. S. 299.

The provisions of § 4284 are not only limited in effect to losses suffered by others than the one petitioning for limitation of liability, but deal solely with losses subject to a pro-rata payment from the sum for which such owner may be liable. *In re Catskill,* 95 Fed. Rep. 702.

Section 4285 is expressly limited to the liability of the owner for loss or destruction of any property, goods or merchandise if he shall transfer his interest in such vessel and freight to a trustee for the benefit of such claimants. *Providence & N. Y. S. S. Co.* v. *Hill Mfg. Co.,* 109 U. S. 578.

This salvage claim being entirely independent of the issues involved in the limitation of liability proceedings, is not embraced within either the letter or the spirit of §§ 4283 to 4285, Revised Statutes.

The salvage services were subsequent to termination of voyage.

Prior to the rendition of the salvage services the steamer *San Pedro* had been abandoned by her crew and was a derelict.

The commissioner's report appraising the vessel was based upon the value of the vessel immediately following the collision and while she lay wrecked in the ocean.

The adoption by the court of this report, appraising the vessel at a point in the ocean immediately after the wreck, involves an implied finding of fact that the voyage was broken up and terminated at that point. *Place* v. *Norwich*

& *N. Y. Trans. Co.*, 118 U. S. 468; *The Pine Forest,* 129
Fed. Rep. 700, 705; *Gokey* v. *Fort,* 44 Fed. Rep. 364; *The
Abbie C. Stubbs,* 28 Fed. Rep. 719; *The Giles Loring,* 48
Fed. Rep. 463, 472; *The Rose Culkin,* 52 Fed. Rep. 328; *The
Doris Eckhoff,* 30 Fed. Rep. 140; *The Great Western,* 118
U. S. 520, 525.

A voyage is terminated by abandonment at sea. Carver,
Carriage by Sea, §§ 307–308; Spencer on Marine Colli-
sions, § 220.

The stipulation should be in an amount equal to the
value of the ship at the time her voyage was terminated
and is to be estimated by deducting from the value at the
port of safety the value of the salvage services. *Pacific
Coast Co.* v. *Reynolds,* 114 Fed. Rep. 877; *The Abbie C.
Stubbs,* 28 Fed. Rep. 719; *The Pine Forest,* 129 Fed. Rep.
705; *The Anna,* 47 Fed. Rep. 525; Benedict, Admiralty,
4th ed., § 371.

The District Court having, at the instigation of appel-
lant, adopted a point of time immediately after the colli-
sion as the termination of the voyage, which fact is there-
fore determined for this appeal, that is the point of time
at which the value of the vessel and freight pending is to
be fixed and also the point of time when the liability to
be limited must be ascertained. *In re Meyer,* 74 Fed. Rep.
881, 897, and cases cited.

Appellant is estopped by its own action in regard to the
appraisement from now endeavoring to force the court to
deduct the amount of the salvage services from the salved
value of the vessel in fixing the amount of the stipulation
for value, and thereafter force the salvors to seek payment
for their services out of such stipulation for value.


MR. JUSTICE LURTON delivered the opinion of the
court.


In an independent libel proceeding instituted in the

District Court by the owner of the steamer *George W. Elder*, against the Metropolitan Lumber Company, the claimant of the steamer *San Pedro*, the libellant, recovered a decree for services rendered in towing her to port after she had been injured in a collision with the steamer *Columbia* off the coast of California. This decree was rendered at a time when there was pending in the same court a separate proceeding for limitation of liability brought by the Metropolitan Lumber Company, as owner of the *San Pedro*.

Before coming to the substantial questions, we may notice certain objections to any judgment which shall operate to set aside the decree in favor of the appellees. It is said that the appellant does not assail the decree in respect to its merits or the amount of the allowance; that nothing but further delay, expense and inconvenience will result if appellees are required to present and again prove the claim in the liability cause; and, finally, it is said that the pendency of the other suit was not pleaded until the case was about to be heard upon immaterial objections to the commissioner's report.

Conceding all that can be said about the expense, delay and inconvenience which will result if the salvage claimants are to be required to present their claim in the limited liability case, yet far greater confusion must result if such objections are enough to defeat the manifest object of the fifty-fourth rule. This court, in furtherance of the apparent purpose of Congress to limit the liability of vessel owners (Revised Statutes, §§ 4283–5), has, by that rule, prescribed how an owner may avail himself of the benefit of the statute. The very nature of the proceeding is such that it must be exclusive of any separate suit against an owner on account of the ship. The monition which issues when the vessel has been surrendered, and a stipulation entered into to pay the value into court, requires every person to assert his claim in that case.

The appellant, owner of the *San Pedro*, appears to have proceeded strictly in compliance with the fifty-fourth admiralty rule. There was a due appraisement of the *San Pedro* and her pending freight and a stipulation entered into, with sureties, for the value so appraised, and a monition duly issued, requiring all persons to present their claims and make proof. In that situation, the jurisdiction of the court to hear and determine every claim in that proceeding became exclusive. It was then the duty of every other court, Federal or state, to stop all further proceedings in separate suits upon claims to which the limited liability act applied.

Nor is the issuance of an injunction necessary to stop proceedings in separate or independent suits upon such claims. Power to grant an injunction exists under § 4285, Revised Statutes, when necessary to maintain the exclusiveness of the jurisdiction; but when the procedure provided by rule 54 has been followed and a monition has issued "against all persons claiming damages . . . citing them to appear before said court and make proof of their respective claims," etc., it is the duty of every other court, when the pendency of such a liability petition is pleaded, to stop. The very nature of the proceeding and the monition has the effect of a statutory injunction. Indeed, that is the express declaration of the statute.

The view we take of the statutory injunction declared by § 4285, Revised Statutes, and of its application to cases where the vessel has been surrendered and a stipulation entered into as provided by admiralty rule 54, as a proceeding tantamount to a "transfer" of the ship as authorized by § 4285, Revised Statutes, is fully supported by the leading case of *Providence & N. Y. S. S. Co.* v. *Hill Mfg. Co.*, 109 U. S. 578, 594, 599, 600 and 601. That was a suit in a state court against the owner of a steamship to recover for goods lost by the burning of a steamer. While the suit was pending the owner filed his petition

in the proper District Court for the benefit of the limited liability statute.   The proceedings seem to have been conducted in accordance with admiralty rule 54, but, in addition, the petitioners made application, as permitted by that rule, for an order restraining the prosecution of "all and any suits" against the owner in respect of claims subject to the provisions of the act.   The owner and defendant in the suit pending in the state court thereupon, by plea, set up the limited liability suit as a reason why the state court should proceed no further.   This was overruled. Later the defendant therein pleaded the final decree in the liability suit as a bar to any decree in the state court against him, as owner.   This, too, was disregarded, and a decree rendered against the owner for the claim for damages caused by the burning of the steamer and the plaintiff's goods.   This was affirmed in the Supreme Judicial Court of Massachusetts and brought here upon writ of error.   After a consideration of the meaning and purpose of the limited liability act of 1851 (March 3, 1851, 9 Stat. 635, c. 43), §§ 4283, 4284 and 4285, Revised Statutes, and of admiralty rule 54, the court said (p. 594):

"We have deemed it proper to examine thus fully the foundation on which the rules adopted in December term, 1871, were based, because, if those rules are valid and binding (as we deem them to be), it is hardly possible to read them in connection with the act of 1851 without perceiving that after proceedings have been commenced in the proper district court in pursuance thereof, the prosecution *pari passu* of distinct suits in different courts, or even in the same court by separate claimants, against the ship owners, is, and must necessarily be, utterly repugnant to such proceedings, and subversive of their object and purpose."

Later, the court added (pp. 599, 600):

"Proceedings under the act having been duly instituted in this court, it acquired full jurisdiction of the subject-

matter; and having taken such jurisdiction, and procured
control of the vessel and freight (or their value), constitut-
ing the fund to be distributed, and issued its monition to
all parties to appear and present their claims, it became
the duty of all courts before which any of such claims
were prosecuted, upon being properly certified of the
proceedings, to suspend further action upon said claims."

\*   \*   \*   \*   \*   \*   \*   \*

"The operation of the act, in this behalf, cannot be
regarded as confined to cases of actual 'transfer,' (which
is merely allowed as a sufficient compliance with the law),
but must be regarded, when we consider its reason and
equity and the whole scope of its provisions, as extending
to cases in which what is required and done is tantamount
to such transfer; as where the value of the owners' interest
is paid into court, or secured by stipulation and placed
under its control, for the benefit of the parties interested."

It was urged in that case that by virtue of § 720, Revised
Statutes, the District Court had no authority to issue an
injunction. But as to this, the court said (p. 600):

"This view of the statutory injunction, and of its effect
upon separate actions and proceedings, renders it unneces-
sary to determine the question as to the legality of the
writ of injunction issued by the District Court. Although
we have little doubt of its legality, the question can only
be properly raised on an application for an attachment for
disobeying it. As the writ was issued prior to the adoption
of the Revised Statutes, the power to issue it was not
affected by any supposed change of the law introduced
into the revision, by the 720th section of which the pro-
hibition of the act of 1793 in regard to injunctions against
proceedings in state courts has this exception appended
to it: 'except in cases where such injunction may be
authorized by any law relating to proceedings in bank-
ruptcy.' Under the rule of '*expressio unius*' this express
exception may be urged as having the effect of exclud-

ing any other exception; though it is observable that the injunction clause in the act of 1851 is preserved without change in section 4285 of the Revised Statutes, and will probably be construed as having its original effect, due to its chronological relation to the act of 1793."

But after an intimation that § 720 did not apply, the court added (p. 601):

"But, as before indicated, the legality of the writ of injunction is not involved in this case. In our opinion the state court, in overruling the plea of the defendants, which set up the proceedings pending in the District Court, and in ordering the cause to stand for trial; and again, on the trial, in overruling as a defense the proceedings and decree of the District Court as set up in the amended answer, disregarded the due effect, as well as the express provisions, of the act of 1851, and therein committed error. It was the duty of the court, as well when the proceedings pending in the District Court were pleaded and verified by profert of the record, as when the decree of said court was pleaded and proved, to have obeyed the injunction of the act of Congress, which declared that 'all claims and proceedings shall cease.'"

But it is contended that a salvage claim, such as the one here involved is not a claim for "damages or injury by collision" within the meaning of § 4283, Revised Statutes, and therefore not one to which the limited liability act applies; that the damages there referred to are damages by collision to other vessels and their cargo, and that the expense of being towed to port is a claim like one for repairs. It is also said that even if the vessel owners may be able to include what they must pay for such a service in the damages recoverable from the guilty vessel, it is notwithstanding not a damage arising from collision within the meaning of that section.

But we need not consider whether the claim is one against the owner of the character described either in

§ 4283 or the succeeding, § 4284. Those sections have been amended by the eighteenth section of the act of June 26, 1884 (23 Stat. 55, c. 121), so as to include "any and all debts and liabilities" of the owner incurred on account of the ship without his privity or fault. *Richardson* v. *Harmon*, 222 U. S. 96.

The service was rendered to the *res*, benefiting alike owner and creditors. The claim is, therefore, of a highly meritorious character. But the question of preference in payment out of the fund is one to be determined in the limited liability case. We, therefore, express no opinion as to whether such a claim may be preferred or must share pro rata with others.

The court below erred in proceeding to render a decree after the pendency of the suit for a limitation of liability was pleaded.

*Decree reversed.*